(129 So. 797)

## EDEN v. STATE.

7 Div. 682.

Court of Appeals of Alabama.

Aug. 19, 1930.

Roy Mayhall, of Haleyville, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

E. O. McCord & Son, of Gadsden, for appellant.

Charlie C. McCall, Atty. Gen., and Merwin T. Koonce, Asst. Atty. Gen., for the State.

38

RICE, J.

Appellant was convicted of the offense of murder in the second degree. His punishment was fixed at imprisonment in the penitentiary for the term of eighteen years. The deceased, one John O'Bryan, a deputy sheriff of Etowah county, attended night "preaching services" at a little country schoolhouse. As the services "broke up," deceased, along with others of the congregation, came out the front door, where, at the steps, defendant accosted deceased, saying he "wanted to speak to him a minute." The two of them defendant (appellant) and deceased, took a few steps, to a corner (front) of the little building, where, in the darkness, defendant shot and killed deceased with a pistol.

There was some conflict in the testimony as to the actions of deceased immediately before and at the time of the shooting, with reference to his attempt, vel non, to draw his pistol, etc., but, so far as we can see, the whole circumstances, as variously interpreted by the different witnesses, were properly allowed to be detailed in the testimony.

Defendant's contention that his purpose in accosting deceased was a peaceable, proper, and lawful one, to adjust a grievance against deceased, on account of a report made to defendant, late in the afternoon of the day of the killing, by defendant's wife, that she had, on the morning of that day, been insulted and abused by deceased, was allowed to be fully presented to the jury, and the law governing the consideration of same was, we think, clearly and correctly given to them in charge.

■ We think and hold that it was not improper to allow the sheriff of the county to testify as to the surroundings, the situation of the deceased's body, etc., the picking up of a pistol, some cartridges, etc., near the body of deceased, at the time said sheriff reached the scene of the killing, a short time after it had occurred. Practically everything to which said sheriff testified was without dispute anyway, but if, as is now argued here by appellant's (defendant's) able counsel, there may have been changes made, in the physical surroundings at the scene of the killing, between the time the same occurred and the time of the arrival of the sheriff, before the sheriff's said testimony could be said to be inadmissible, we think there would have had to be in evidence testimony showing or tending to show such changes. In other words, what we are trying to say is that we do not think the sheriff, going promptly to the scene of a homicide to investigate same, should not be allowed to tell the jury what ne found, upon reaching the scene, especially where it clearly appears that he is merely narrating what he observed when he reached the place, and that no effort is made to have the jury understand him, or his testimony, differently—where, in fact, it could not be understood differently.

Aside from our belief that the testimony of the sheriff, discussed above, was competent, and admissible, we are clear to the conclusion, and hold, that the same, considered in connection with the whole evidence, was not prejudicial to defendant's case anyway.

■ It was error, and, so far as we can see, prejudicial, to allow the defendant's witness Pierce Battles to be impeached by showing that he had served a "ninety day sentence here in jail, from the federal court." Appellant's motion to exclude this testimony should have been sustained. Pippin v. State, 197 Ala. 613, 73 So. 340; Huckabaa et al. v. State, 4 Ala. App. 68, 58 So. 684.

■ A reading of the opinion by Mr. Justice Sayre, in the case of Bolton v. State, 209 Ala. 179, 95 So. 874, 875, coupled with an examination of the authorities he cites, leads us to the conclusion, and we hold, that the defendant should have been allowed to testify that, at about "sundown" on the day of the killing, which killing occurred as soon as he came into the presence of deceased thereafter, and not more than two or three hours after receiving the information, defendant's wife told defendant, for the first time, of an assault, or an attempted assault, made on her, or, at least, of a grave insult offered her, by the deceased on the morning of that day. And that, likewise, defendant's wife should have been allowed to testify as to having so informed her husband. We think, under the holding in Bolton v. State, supra, this testimony was admissible because it "may have led the jury to conclude that defendant, by reason of passion thus [i. e. by the receipt of the information contained in the rejected testimony] aroused, was not guilty of murder, which implies malice, but of manslaughter only." It is true the authorities we have examined, in holding such testimony admissible, say that

the information contained in same, or about which the testimony is offered must have been conveyed "immediately" before the homicide. But "immediately" is, we think, a relative term, and where, as here, all the occurrences take place in the "country," where distances are greater, the fact that defendant acquires the information at "sundown" and goes at once to where deceased was and there accosts and kills him, it seems should not operate to deprive the defendant of having the jury receive and consider the testimony referred to as bearing upon the proposition of law above mentioned.

At least so we hold, and that it was error to sustain the state's objections to the several questions to defendant, and to his wife, testifying as his witness, calling for the testimony under discussion.

Our knowledge of human nature teaches us, or we think and hold it does, that one receiving, as appellant sought to testify he did, inflammatory news of an assault upon his wife, would naturally have his passions aroused, and that the lapse of a mere three hours of time would not serve to cool same, unless in the meantime an explanation was made.

 But, again the wife of appellant, testifying as his witness, said that deceased told her, on the morning of the day of the killing, that, "if you tell your husband what has happened, I will kill him," and that she communicated this threat to her husband, before the fatal rencontre. Appellant sought to have the witness tell the jury "what had happened," and that she likewise told her husband that. The state's objections were sustained to the questions calling for this information.

Notwithstanding the general rule as to testimony as to threats against defendant by deceased, news of which had been communicated to defendant before the fatal difficulty, that "deceased's attitude and manner in making the threat may be shown, * * * and other significant surrounding circumstances," and that "other parts of the conversation which would aid defendant in judging the weight to be given to threats are held admissible" (30 C. J. 239), still the law in our state seems to be that testimony as to only the "actual threat" may be admitted.

Feeling that our Supreme Court, if the question were again before it, might adopt the views of Justices Sharpe and Dowdell, as expressed in the opinion in the case of Harkness v. State, 129 Ala. 71, 30 So. 73, we assert that it is only by reason of the holding of that court in the case of Bluett v. State, 151 Ala. 41, 44 So. 84, that we are now constrained to hold that the state's objections to the questions to the wife of appellant, calling for testimony as to "what had happened" between her and deceased, to which deceased had reference in his threat to kill defendant, were properly sustained, as on the theory that said testimony was offered as the "details of the conversation, etc., between witness and decedent," and hence inadmissible.

The solicitor, in his argument to the jury, called around a brother of the deceased, not a witness in the case, and the two of them re-enacted the killing of deceased by appellant, according to the state's theory of the case, in a rather dramatic way, and with no detail omitted. It seems that we may not hold the permission by the court, over proper objection, of such argument or conduct, reversible error, provided the demonstration, etc., was based strictly on the evidence. Henderson v. State, 15 Ala. App. 1, 72 So. 590.

In the instant case it is difficult to determine whether or not this is true. And, since the judgment of conviction must be reversed, anyway, we shall not undertake to do so. But the whole performance was, in our opinion, unseemly, and added nothing to the dignity of the law. It doubtless will not be repeated. See Smith v. State, 182 Ala. 38, 62 So. 184; Moorman v. State, 109 Miss. 848, 69 So. 1000.

For the errors we have pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.