ON RETURN TO REMAND
The appellant, Lewis Finley, was indicted for assault in the second degree in violation of § 13A-6-21, Code of Alabama 1975. A jury found Finley guilty as charged in the indictment. The trial court then sentenced Finley as an habitual offender to 50 years in prison. Following his oral notice of appeal, Finley filed a motion for a new trial in which he raised an ineffective assistance of counsel claim. The trial court did not rule on the motion, saying it had no jurisdiction over the motion because the case was on appeal. Before considering Finley's appeal, this court remanded this case to the trial court for an evidentiary hearing on the issue of alleged ineffective assistance of counsel.
On return to remand, the trial court denied Finley's motion for a new trial. In a written order denying the motion, the trial court found that Finley had effective assistance of counsel at the time of the trial. We need not review this issue, however, because in reviewing Finley's appeal on the merits, we found reversible error as to another issue.
On appeal, Finley argues that the trial court erred in allowing the prosecutor to impeach his testimony by questioning him about collateral crimes that did not involve moral turpitude and that did not fit within any exceptions to the general exclusionary rule, which disallows evidence of collateral bad acts. He also claims the trial court erred in allowing the prosecutor to elicit specific details concerning a prior conviction for second degree assault.
In Alabama a witness can be impeached by showing that the witness had been convicted of a crime of moral turpitude. §12-21-162(b), Code of Alabama 1975. Clearly, this means that crimes not involving moral turpitude cannot be used to impeach the witness.
In this case, on direct examination of Finley, defense counsel asked him about previous convictions:
 "Q. [defense counsel]: Now, Lewis, you were convicted in 1987 for assault, right?
"A. [Defendant]: Yes, sir. *Page 764 
 "Q. And I believe that you've been convicted for theft-type offenses —
"A. Yes, sir.
"Q. — twice, right?
"A. Yes, sir.
 "Q. You're not exactly a choirboy, either, right?
"A. No, sir."
On cross-examination of Finley, the following colloquy was had:
 "[Prosecutor]: Mr. Finley, I believe Mr. Harrison asked you about some of your prior arrests. Do you remember whether or not you were arrested —
 "MR. HARRISON [defense counsel]: Judge, I —
"[Prosecutor]: — in 1981 —
 "MR. HARRISON: — I believe the law relates to convictions for crimes of moral turpitude, and I would hope Mr. Abbett knows that.
 "THE COURT: Okay, I just ruled, and I told you when you were up here, too, that you opened it up. Now he can ask. Go ahead.
 "Q. [prosecutor]: Mr. Finley, were you arrested in 1981 for carrying a concealed weapon?
"A. Could have been. I don't remember.
"Q. By the Auburn Police Department?
"A. I don't remember.
 "Q. In 1982 for resisting a police officer, assault and reckless endangerment. Do you remember that?
"A. Could have been. I don't remember.
 "Q. In 1982 also for criminal mischief in the third degree and assault in the third degree?
"A. I wouldn't know.
 "Q. Don't remember that one, either? How about 1983 for larceny in the second degree and burglary in the third degree?
"A. Yes, I remember that.
"Q. You remember that one?
"A. Yes, sir.
 "Q. Do you remember in 1983 being convicted of buying, receiving, or concealing stolen property and sentenced to four years?
"A. Yes, sir.
 "Q. In 1985 you were arrested for larceny in the first degree; is that correct? And later pled guilty to unauthorized use of a vehicle in that case?
"A. Yes sir.
 "Q. 1986 — you were arrested for vehicle theft. Do you remember that?
"A. No, sir.
 "Q. Do you remember in 1986 being convicted of assault in the second degree and sentenced to seven years?
"A. Yes, sir.
 "Q. And that was for hitting your grandmother —
"MR. HARRISON: Judge, objection! Move to strike.
"THE COURT: Overruled.
"MR. HARRISON: Move for a mistrial.
"THE COURT: Motion denied. Go ahead, Mr. Abbett.
 "Q. That was for hitting your grandmother in the head with a rock, wasn't it?
 "MR. HARRISON: Judge, objection! He cannot go into the —
 "THE COURT: I guess he can go into it if I rule that way, and I ruled he can. Now go ahead.
"Q. Wasn't it?
"A. Yes, sir.
 "Q. In 1987 you were arrested or convicted of resisting an officer; is that correct?
"A. Could have been.
 "Q. 1990 — you were arrested for driving under the influence of liquor?
"A. Yeah.
"Q. 1990 — for resisting a police officer again?
"A. Yes, sir.
"Q. In 1990 for trespass in the first degree?
"A. Yes, sir.
 "Q. And, also, in June of 1992 for driving under the influence of liquor; do you remember that? *Page 765 
"A. Yes, sir."
Finley contends that the trial court erred in admitting evidence of the following collateral crimes because they are not crimes involving moral turpitude: (1) carrying a concealed weapon (1981); (2) resisting a police officer (1982); (3) assault (1982); (4) criminal mischief in the third degree (1982); (5) assault in the third degree (1982); (6) unauthorized use of a vehicle (1985); (7) assault in the second degree (1986); (8) resisting a police officer (1987); (9) DUI (1990); (10) trespass in the first degree (1990); and (11) DUI (1992).
Our first question is whether these crimes are crimes of moral turpitude. "A crime of moral turpitude is one that is contrary to justice, honesty, principle, or good morals; an act of baseness, vileness, or depravity in the private and social duties that a man owes his fellow man or society. It is a crime that is immoral in itself, regardless of the fact that it is punishable by law." Ex parte Bankhead, 585 So.2d 112, 122 (Ala. 1991) (citations omitted). The courts of this state have held that several of the crimes that the prosecutor used to impeach Finley are not crimes of moral turpitude, including resisting a police officer, Holcomb v. State, 35 Ala. App. 528, 50 So.2d 165
(1951); trespass, United States Lumber Cotton Co. v. Cole,202 Ala. 688, 81 So. 664 (1919); driving under the influence,Maxwell v. State, 620 So.2d 93, 97 (Ala.Crim.App. 1992); and assault in the third degree, Johnson v. State, 629 So.2d 708
(Ala.Crim.App. 1993), aff'd, 629 So.2d 714 (1993). See also, C. Gamble McElroy's Alabama Evidence § 145.01(9) and (10) (4th ed. 1991). Because the prosecutor used crimes that do not involve moral turpitude to impeach Finley, we need not reach the question of whether the offenses of carrying a concealed weapon, unauthorized use of a vehicle, and criminal mischief are crimes involving moral turpitude.
Our next question is whether the prosecution's use of crimes not involving moral turpitude to impeach Finley was improper. The State argues in its brief to this court that this court and the Alabama Supreme Court have held that when the defendant initially testifies as to prior convictions, the door is opened for the State to question that defendant further in this regard. In support of this contention, the State cites three cases, Griffith v. State, 607 So.2d 317 (Ala.Crim.App. 1992), cert. denied, 607 So.2d 320 (Ala. 1992); Ex parte Bankhead,585 So.2d 112, 122 (Ala. 1991); and Bailey v. State, 579 So.2d 55
(Ala.Crim.App. 1991). In each of these cases, however, the prior convictions involved crimes of moral turpitude. The issue in Bankhead, in fact, was whether the convictions used to impeach the defendant actually involved crimes of moral turpitude. The Supreme Court held that because the crimes were crimes involving moral turpitude, the State could use those crimes to impeach the defendant in that case.
The defendant's admission on direct examination that he has been convicted of a crime involving moral turpitude does not open the door for the prosecution to ask about any crime that may be committed. "In cross-examining a witness for the purpose of impeaching him by showing the commission of a crime involving moral turpitude, care should be exercised so as not to include an offense that does not involve moral turpitude."Kennedy v. State, 371 So.2d 464, 468 (Ala.Crim.App. 1979). The prosecution is still limited to asking only about crimes involving moral turpitude. To hold otherwise would unfairly place the defendant on the horns of a dilemma. The defendant would be faced with the choice either of admitting to having been convicted of a crime involving moral turpitude and allowing the prosecution to ask about any crime it wished, or remaining silent as to his convictions and risking having the prosecution impeach him with evidence of convictions for crimes involving moral turpitude, in which case he would risk having the jury perceive him as a liar or as hiding relevant information. Defendants should not be forced into such a no-win situation. Therefore, we hold that the prosecution improperly impeached Finley with a string of crimes that did not involve moral turpitude.
Furthermore, we agree with Finley that the trial court erred by allowing the prosecution to go into the details of the crime that resulted in his earlier second-degree assault conviction. *Page 766 
 "The presence of a rule that one may cross-examine a witness as to his conviction of a crime involving moral turpitude naturally gives rise to the question of how many details of that crime may the impeaching party ask about and, if necessary, prove by his own witnesses. The law of Alabama, in keeping with the general rule of this country, is that one generally cannot go beyond the name of the crime, the time and place of conviction and the punishment. It would be impermissible to ask about or prove further details such as the name of the victim, whether the victim was adult or child and general aggravating circumstances."
C. Gamble, McElroy's Alabama Evidence, § 145.01(11) (4th ed. 1991). Scarbrough v. State, 528 So.2d 890, 893 (Ala.Crim.App. 1988).
Because second-degree assault is a crime of moral turpitude,Johnson v. State, 629 So.2d 708 (Ala.Crim.App.), aff'd,629 So.2d 714 (Ala. 1993), the State properly questioned Finley about his conviction for that crime. However, the prosecutor went beyond asking the permissible questions regarding the name of the crime, the time and place of conviction, and the punishment Finley received. Instead, he asked about specific details of the crime itself, including whether the victim was Finley's grandmother and whether he had hit her in the head with a rock. Such questions are improper, and the trial court erred in allowing the prosecution to ask such questions.
The prosecution in this case impermissibly impeached Finley with crimes not involving moral turpitude and improperly sought to elicit details of a prior crime beyond what is permitted by law. Therefore, the judgment of the trial court is reversed and the cause remanded.
REVERSED AND REMANDED.
All the Judges concur.
BOWEN, P.J., concurs in result only.